STATE of North Dakota, Plaintiff
and Appellee,

v.

Henry Herbert HOWE, Defendant
and Appellant.

Cr. 569.

Supreme Court of North Dakota.

Aug. 1, 1977.

See also N.D., 257 N.W.2d 420.

Irvin B. Nodland, Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, and Richard B. Baer, Christensen, Baer & Thompson, Bismarck, for defendant and appellant; argued by Nodland.

Calvin N. Rolfson, Deputy Atty. Gen., Bismarck, and John T. Paulson, Barnes County States Atty., Valley City, for plaintiff and appellee; argued by Rolfson.

ERICKSTAD, Chief Justice.

Henry H. Howe appeals from a judgment and sentence upon a jury verdict convicting him of the crime of failure to appear after release, and from a subsequent order denying motions for judgment notwithstanding the jury verdict, for arrest of judgment, and alternatively for a new trial.

## MOTION TO DISMISS APPEAL

Before revealing the facts and considering the substance of this appeal, we must first consider the motion by the State to dismiss this appeal because of alleged failure by Howe and his attorneys to comply with the North Dakota Rules of Appellate Procedure.

The State, in the conclusory section of its brief, maintains that Howe violated the North Dakota Rules of Appellate Procedure in ten different ways:

"1) He has filed a defective Notice of Appeal by omitting in the notice both the name of the party taking the appeal and the court to which the appeal is taken, in violation of Rule 3(c), N.D.R.App.P.

"2) He has belatedly filed a second defective notice of appeal which notice failed to state the court to which the appeal is taken in violation of Rule 3(c), N.D.R.App.P., and which notice was untimely filed seven days beyond the deadline in violation of Rule 4(b), N.D.R.App.P.

"3) He has failed to timely order the transcript from the trial court reporter, having placed the order 21 days beyond the established limits in violation of Rule 10(b), N.D.R.App.P.

"4) He has failed to transmit the complete record on appeal, including the transcript, within 40 days after filing the notice of appeal, said transcript being filed on April 13, 1977, resulting in a delay of 157 days (over 5 months) beyond the mandated deadline, all in violation of Rule 11(a), N.D.R.App.P.

"5) He has failed, within the time originally prescribed for transmittal of the record under Rule 11(a), to move the trial court for an extension of time within which to transmit the record on appeal to the Supreme Court, said delay being fifteen (15) days beyond the deadline when such motion may be properly made, all in violation of Rule 11(d), N.D.R.App.P.

"6) He has requested of the trial court an extension of the time within which to transmit the record on appeal, said request extending the time to a period beyond the maximum 90 day limit, all in violation of Rule 11(d), N.D.R.App.P. [Citation omitted.]

"7) He has failed to cause a timely transmittal of the record on appeal, including the transcript, having transmitted the transcript to the Supreme Court and the State on April 13, 1977, 156 days beyond the mandates of Rule 11(a), and 107 days beyond the mandates of Rule 11(d), all in violation of Rule 12(c), N.D.R.App.P.

"8) He has failed to apply to the North Dakota Supreme Court for any extensions of time beyond the prescribed rules limits, as permitted by Rule 26(b), N.D.R.App.P.

"9) He has failed to serve copies of all papers upon the State/appellee, and in particular, has submitted ex parte motions to the trial court without any notice to the State whatsoever, in direct violation of Rules 25(b), 25(d), 27(a), and 27(b), N.D.R.App.P.

"10) He has failed to timely serve and file his appellant's brief within forty (40) days after the deadline for filing the record, having filed his briefs on April 13, 1977, approximately 104 days beyond maximum limits and without securing proper extensions, all in violation of Rules 31(a) and 31(c), N.D.R.App.P."

Although the State has listed 10 separate violations of the Rules of Appellate Procedure, alleged violations (1) and (2) may be considered together. Numbers (3) through (8) and (10) may also be considered together, as all relate to the failure to cause a timely transmittal of the record.

■ As to any defects in the first and second notices of appeal, we note that a notice was in fact filed within ten days after the entry of judgment, in compliance with the jurisdictional requirement of Rule 4(d), N.D.R.App.P. The State makes no argument that the first notice of appeal,

even without the second, fails to give actual notice of the appeal in this specific case, nor does it argue that it was prejudiced in any particular way because of the lack of service noted in point (9) above. The alleged violations of time requirements must be considered in light of the strong objective of this court that whenever reasonably possible, a case should be disposed of on its merits. *Dehn v. Otter Tail Power Co.,* 248 N.W.2d 851, 856 (N.D.1976); *LeFevre Sales, Inc. v. Bill Rippley Construction Inc.,* 238 N.W.2d 673 (N.D.1976).

In his return to the motion to dismiss the appeal, Howe did not deny that these violations occurred, though he characterized the State's description of events surrounding the violation of these rules as "overall not an accurate reflection of what has been happening in this case." He further resists the motion to dismiss upon the grounds that (1) the North Dakota Rules of Appellate Procedure are conflicting and confusing, (2) actions taken by the clerk of the Supreme Court of North Dakota and the court reporter at trial have caused delay and confusion, (3) his lawyer's "inadequacies, schedule, and errors are not the fault of the defendant," and (4) actions taken on the part of the State would render dismissal inequitable in this case.

Conflicting affidavits have been submitted by Howe's attorney, Irvin Nodland, and by attorney general, Allen Olson, regarding contact between Nodland and Olson with regard to this case. Nodland asserts that negotiations initiated by the attorney general with regard to this and related cases resulted in many of the delays in this case, and that the attorney general promised that dismissal would not be sought because of such delays. These assertions are disputed by the attorney general in his affidavit. Though we have no way of knowing just who initiated these negotiations and what the exact substance of such negotiations were, we do conclude that the situation was one of confusion.

In *State v. Paulson,* 256 N.W.2d 556 (N.D. 1977), decided today, we have dismissed a criminal appeal for failure to follow the Rules of Appellate Procedure. There, upon a review of relevant considerations brought out in opinions of this court dealing with motions to dismiss appeals and cataloged in *State v. Vogan,* 243 N.W.2d 382 (N.D.1976), we determined that no good cause was shown why we should not dismiss that appeal.

In *Paulson,* the motion to dismiss the appeal of a criminal defendant was based upon the ground that the appellant had not filed a brief upon the merits of his appeal. At the time the motion to dismiss was argued, the brief upon the merits had still not been filed nor had the specific grounds for appeal been asserted. This court had been given no indication of the basis for the appeal and nine months had expired from the date of the notice of the appeal.

In the instant case, we have the briefs on the merits before us and have heard oral arguments upon them. Regardless of who initiated negotiations between the attorney general's office and those representing the interests of Henry Howe, it is apparent from the record that such negotiations took place and that the attorney general's office was involved.

We believe that the criticism of the clerk of court's office is unwarranted as it is not the responsibility of that office to notify the parties of the time restraints, but is the responsibility of counsel to keep the time limits in mind and act accordingly. *Gerhardt v. Fleck,* 251 N.W.2d 764, 766 (N.D.1977).

Though the State claims to have been prejudiced by the stated violations of the Rules, we have not been shown how any prejudice could result to the State due to such violations should the merits of the appeal be decided. In that respect, this case is clearly unlike *State v. Paulson, supra,* which we have earlier distinguished, in which there had been no written or oral arguments upon the merits and in which we had not been apprised of the grounds for appeal. In *Paulson,* we noted that the defendant would still have an opportunity to attack his conviction under the Post-Conviction Procedure Act (Ch. 29–32, N.D.C.C.). *Accord, State v. Vogan, supra.* In this case, resort to the Post-Conviction Procedure Act

would be wasteful, in that the arguments of both sides on the merits are before us.

 As we prefer to hear appeals on their merits (*Kittelson v. Havener,* 239 N.W.2d 803 (N.D.1976)), and as our discretion is to be exercised in a manner to promote justice (*State v. Vogan, supra*), the motion to dismiss this appeal is denied.

## FACTS

In September of 1975, two criminal complaints and warrants of arrest were issued against Henry H. Howe, then engaged in the practice of law in Valley City, North Dakota. Both of these charges were later dismissed. One complaint charged Howe with tampering with a witness in violation of Section 12.1–09–01, N.D.C.C., and the other charged him with unlawful delivery of a controlled substance in violation of Sections 19–03.1–03, –05, and –29, N.D.C.C.

Pursuant to these arrest warrants, Barnes County deputy sheriff Loren Anderson and Valley City police officer Bernard Kracht proceeded to Howe's residence. Howe admitted them to his law office, located in his home. After allowing Howe to complete a telephone conversation that he was engaged in at the time they arrived, the officers handed him copies of the two complaints. Deputy Anderson testified that he informed Howe that he was under arrest shortly thereafter. Deputy Anderson further testified that a woman who was in the house, whom he identified as Mary Seaworth, came into the office and that Howe said to her " 'They are arresting me' or something to that effect."

Officer Kracht testified that he then began to recite the *Miranda* warning to Howe, at which time the latter picked up the telephone and called the Honorable C. J. Cieminski, judge of the Barnes County court of increased jurisdiction, who had issued the warrants. Howe then handed the telephone to Officer Kracht who spoke to Judge Cieminski. Officer Kracht testified that Judge Cieminski directed him to "let [Howe] go and let him appear on his own recognizance at 10:00." The officers then left the house without taking Howe with them.

Judge Cieminski testified that Howe asked, in the telephone conversation, to be released on his personal recognizance, and that he acquiesced in this, stating that Howe was scheduled to appear in the county court of increased jurisdiction in 15 minutes from the time of the call for a call of the calendar. Judge Cieminski further testified that the rules of his court required that Howe, as an attorney representing clients in cases pending for the coming term, to be present during the call of the calendar. Upon being asked whether he placed any conditions upon Howe in connection with his release, Judge Cieminski stated that "the condition placed upon him at that time would be that he be here at 10:00 where we would have further proceedings."

Howe testified that, rather than appearing at the call of the calendar in Judge Cieminski's court, he attempted to telephone attorney William Lanier in Fargo, and then got in his car and drove to West Fargo, bringing Mary Seaworth and his two children with him. He stopped at the office of his cousin, James Lange, in West Fargo, and spoke to him. From there he telephoned Fargo attorney Craig Richie and made an appointment to speak to him. He arrived at Richie's office at about noon and discussed the situation with him. Richie called Judge Cieminski who, according to Richie, demanded that Howe be returned to Valley City. Richie advised Howe that he should turn himself in and should obtain another attorney.

Howe testified that he then started back toward Valley City, stopping at Tower City to telephone his parents in Colorado, but was unable to reach them. He then turned around and went back to Fargo, and spent the night at a motel.

The next day, he arranged to meet Richie at the office of the Honorable George Duis, judge of the Cass County court of increased jurisdiction. After a conversation with Richie and Judge Duis, Howe was taken by Cass County sheriff's officers and locked in the Cass County jail. That evening he was taken back to Valley City and incarcerated in the Barnes County jail. The following day he appeared before Harold Herseth, judge of the Stutsman County court of increased jurisdiction, and was at that time

released on an unsecured appearance bond in the amount of $2,000.

A complaint filed on September 24, 1975, before Judge Cieminski, by John T. Paulson, Barnes County states attorney, charged Howe with criminal contempt of court in violation of Section 27–10–01(3), N.D.C.C. This charge was either dismissed or not pressed. On October 17, 1975, a complaint by Bernard Kracht was filed in the Barnes County court of increased jurisdiction charging Howe with the offense of failure to appear after release in violation of Section 12.1–08–05, N.D.C.C., a class C felony as applied to the facts of this case.

A preliminary examination was held on November 3, 1975, before Grand Forks county judge of increased jurisdiction, Kirk Smith, sitting as the Barnes County court of increased jurisdiction. Following the preliminary examination, upon a determination by the court that a public offense had not been committed, Howe was ordered discharged with regard to the latter charge. The prosecuting attorney having orally announced his intention to submit the record to the judge of the district court for review pursuant to Rule 5.1(b), N.D.R.Crim.P., Judge Smith ordered that the order of discharge be stayed until action was taken by the district court.

By order dated April 20, 1976, the Honorable Hamilton E. Englert, Judge of the First Judicial District for Barnes County, vacated the order of the county court of Barnes County discharging the defendant. The case was tried to a jury with the Honorable Roy K. Redetzke, Judge of the Barnes County District Court, presiding, and on May 24, 1976, a verdict was returned finding Howe guilty of the crime of failure to appear after release.

### DISPOSITION ON THE MERITS

Howe makes three arguments in this appeal: (1) that the district court's review of the finding of no probable cause at the preliminary hearing is improper as being, in effect, an appeal not authorized by statute; (2) that the preliminary examination was somehow affected by Rule 46, N.D.R. Crim.P., effecting an "exoneration" of any violation of a conditioned release; (3) that the jury verdict is contrary to the evidence

and that the evidence is insufficient to sustain a finding of guilty.

■ We hold that the evidence in this case cannot be construed to show a violation of Section 12.1–08–05, N.D.C.C., and thus need not address the first two issues.

The statute Howe was convicted of violating reads as follows:

"1. A person is guilty of an offense if, after having been released upon condition or undertaking that he will subsequently appear before a court or judicial officer as required, he willfully fails to appear as required.

"2. The offense is a class C felony if the actor was released in connection with a charge of felony or while awaiting sentence or pending appeal after conviction of any crime. Otherwise it is a class A misdemeanor." § 12.1–08–05, N.D.C.C.

The statute refers to a release with a condition attached after an appearance before a court or judicial officer and not to a release prior to such appearance. We do not believe the language of the statute contemplates a constructive appearance by telephone. In addition, such constructive appearance would create almost insurmountable difficulties. It would serve no real purpose to recite and discuss them here.

■ We make reference to Rules 5 and 46, N.D.R.Crim.P., which it is evident the judge of the county court of increased jurisdiction did not follow, merely to show the procedures which are prescribed to be followed and not that it is necessary to find a violation of either or both of these rules before the actions constitute a violation of Section 12.1–08–05, N.D.C.C. A violation of the statute may be established independent of any Rules of Criminal Procedure.

"*RULE 5. Initial Appearance Before the Magistrate.*

"(a) General.

An officer or other person making an arrest *shall take the arrested person without unnecessary delay before the nearest available magistrate.* If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith in the county where the offense was allegedly committed. A copy of the

complaint shall be given within a reasonable time to the arrested person and to any magistrate before whom he is brought, if other than the magistrate with whom the complaint is filed.

"(b) Statement by the Magistrate at the Initial Appearance.

(1) In All Cases.

The magistrate shall inform the defendant:

(i) Of the charge against him and any accompanying affidavit;

(ii) Of his right to remain silent; that any statement made by him may later be used against him;

(iii) Of his right to the assistance of counsel before making any statement or answering any questions;

(iv) Of his right to be represented by counsel at each and every stage of the proceedings;

(v) That if the offense charged is one for which court-appointed counsel is required, the defendant has the right to have legal services provided at public expense to the extent that the defendant is unable to pay for his own defense without undue hardship; and

(vi) That he has the right to be admitted to bail pursuant to the provisions of Rule 46.

(2) Felonies.

If the offense charged is a felony, the magistrate shall inform the defendant also of his right to a preliminary examination, the right to waive the preliminary examination and the right to the assistance of counsel at the preliminary examination.

(3) Misdemeanors.

If the offense charged is a misdemeanor, the magistrate shall inform the defendant also of his right to trial by jury in all cases as provided by law, and of his right to appear and defend in person or by counsel.

"(c) Right to Preliminary Examination.

(1) Waiver.

The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the magistrate shall hold him to answer in the district court having jurisdiction to try the case. The magistrate shall admit him to bail pursuant to the provisions of Rule 46.

(2) Non-waiver.

If the defendant does not waive preliminary examination, a magistrate of the county in which the offense was allegedly committed shall hear the evidence within a reasonable time. *The magistrate shall admit him to bail pursuant to the provisions of Rule 46.*" [Emphasis added.] Rule 5, N.D.R.Crim.P.

"*RULE 46. Release from Custody.*

"(a) Release Prior to Trial.

(1) Release in non-capital cases prior to trial.

(i) Any person charged with an offense, other than an offense punishable by death, shall, at his initial appearance before a magistrate, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the magistrate, unless the magistrate determines, in the exercise of his discretion, that release will not reasonably assure the appearance of the person as required. If that determination is made, the magistrate, either in lieu of or in addition to the above methods of release, shall impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that

assurance, two or more of the following conditions:

(A) Place the person in the custody of a designated person or organization agreeing to supervise him;

(B) Place restrictions on the travel association, or place of abode of the person during the period of release;

(C) Require the execution of an appearance bond in a specified amount and the deposit with the court, of cash or other security as directed in an amount not to exceed 10 per centum of the amount of the bond, which deposit shall be returned upon the performance of the conditions of release;

(D) Require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(E) Impose any other conditions deemed reasonably necessary to assure appearance as required, including a condition requiring the return of the person to custody after specified hours.

(ii) In determining which conditions of release will reasonably assure appearance, the magistrate, on the basis of available information, shall take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear voluntarily at court proceedings.

(iii) *A magistrate authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any violation.*" [Emphasis added.] Rule 46(a)(1), N.D.R.Crim.P.

The State urged, during oral argument, that the failure of the court and the officers to require his appearance before release was the result of Howe's request. This fact cannot change the elements of the crime. Notwithstanding that Howe may have been responsible for his release, such release was prior to an appearance before the court, not subsequent to an appearance before the court, and accordingly was not in violation of the statute.

For the reasons stated in this opinion, the judgment and sentence appealed from is reversed.

In so deciding, we have reached the conclusion only that Howe is not guilty of the crime of "failure to appear after release". This does not mean that we condone what he has done, especially in light of the fact that he is a lawyer and is held to the high standards of the Code of Professional Responsibility.

VOGEL, PEDERSON and SAND, JJ., and LARRY M. HATCH, District Judge, concur.

PAULSON, J., deeming himself disqualified, did not participate; LARRY M. HATCH, District Judge of the Third Judicial District, sitting in his place.