The STATE of North Dakota,
Plaintiff and Appellee,

v.

Henry H. HOWE, a/k/a Henry H. Howe,
Jr., Defendant and Appellant.

Crim. No. 569–A.

Supreme Court of North Dakota.

July 23, 1981.

Mikal Simonson, State's Atty., Valley City, for plaintiff and appellee; argued by Simonson. Appearance by Thomas Goven, Senior Law Student.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, and Stephen Pevar, Denver, Colo., for defendant and appellant; argued by Stephen Pevar, Denver, Colo. Appearance by Henry Howe, Grand Forks, and Charles M. Carvell, Jamestown.

ERICKSTAD, Chief Justice.

The appellant, Henry H. Howe, requests this Court to determine whether or not an arrestee who is not subsequently convicted of any crime is entitled to expunction of his criminal arrest records. We hold that a person whose arrest does not result in conviction is entitled to expunction of his arrest records only if he was wrongfully arrested in violation of his constitutional rights. We reverse and remand for further proceedings consistent with this opinion.

The circumstances underlying this case are recited in *State v. Howe*, 257 N.W.2d 413 (N.D.1977), but we will briefly reiterate those facts which are relevant to the issue raised on this appeal. During September of 1975, two criminal complaints and two warrants of arrest were issued against Howe who was then engaged in the practice of law at Valley City. One complaint charged Howe with tampering with a witness in violation of Section 12.1–09–01, N.D.C.C., and the other charged him with unlawful delivery of a controlled substance in violation of Sections 19–03.1–03, –05, and –29, N.D.C.C. Two law enforcement officers, with the arrest warrants in hand, proceeded to Howe's residence and informed him that he was under arrest. Howe immediately telephoned the Honorable C. J. Cieminski, Judge of the Barnes County Court of Increased Jurisdiction, who, upon discussing the matter with Howe, directed the officers to let Howe appear before the court on his own recognizance at 10:00 a.m. that day. Howe failed to appear before Judge Cieminski at the stated time, and the following day he was taken into custody by Cass County authorities in Fargo and later incarcerated in the Barnes County jail at Valley City.

The charges under Section 12.1–09–01, N.D.C.C., and Sections 19–03.1–03, –05, and –29, N.D.C.C., were subsequently dismissed, but Howe was charged with the offense of failure to appear after release in violation of Section 12.1–08–05, N.D.C.C. By jury trial in the district court of Barnes County, Howe was found guilty of the crime of failure to appear after release. Howe appealed his conviction to this Court, and in *State v. Howe*, 257 N.W.2d 413 (N.D.1977), his conviction was reversed on the ground that the evidence introduced against Howe did not demonstrate a violation of the crime charged against him under Section 12.1–08–05, N.D.C.C.

On December 13, 1980, more than three years after this Court had set aside his conviction, Howe filed a motion with the district court, as a proceeding in the criminal case, for expunction of his arrest records, and specifically:

"1. For an Order, directing the Sheriff of Cass County, the Sheriff of Barnes County, and the Director of the Bureau of Criminal Investigation in Bismarck, North Dakota, as well as any other person or agency in possession of original or duplicate arrest records relating to the arrest of the defendant for violation of North Dakota Century Code Sections 12.-1–09–01, 12.1–08–05, and/or 19–03.1–23, to return any and all such original or duplicate records to the defendant, Henry H. Howe, Attorney at Law, P.O. Box 34, Grand Forks, ND, 58201, forthwith and without delay, and, further expunge any reference to such arrest from any official docket or register. The Word 'Record' in this order shall include, but shall not be limited to, any fingerprint card, computer card, or case card retained by the agency, whether or not such record represents an officially required, or informally kept, agency record.

"2. For a further order directing the Clerk of the District Court of Barnes County to expunge any record or docket

entry relating to the conviction of the defendant for violation of NDCC Section 12.1–08–05.[1]

"3. For such other and further relief as may seem appropriate."

Howe sent a NOTICE OF MOTION by mail to the following parties: the Cass County Sheriff, the Barnes County Sheriff, the Director of the Bureau of Criminal Investigation, the North Dakota Attorney General, the Barnes County States Attorney, and the Barnes County Clerk of the District Court. No written response was filed by any of these parties; however, on December 30, 1980, counsel did appear on behalf of the Barnes County States Attorney, the Barnes County Sheriff, and the Barnes County Clerk of the District Court to argue the merits of the motion. At that hearing, the district court judge ruled from the bench that he was appointing the attorney representing the Barnes County parties to represent all parties named by Howe in his motion. Subsequent to the hearing, the court determined that it had no statutory or other authority to order the expunction of arrest records, and it entered an order denying Howe's motion from which he has filed this appeal.

Preliminary to discussing the merits of Howe's request for expunction of his arrest records, it is necessary to determine whether or not Howe properly raised this matter by his motion. This Court has stated that a criminal action is pending until its final determination upon appeal or until the time for appeal has passed. *State v. Jager*, 91 N.W.2d 337 (N.D.1958). There is no statute or procedural rule which allows this type of motion to be filed in a criminal case more than three years after a final determination has been made by this Court upon appeal.

The relief requested by Howe is of a civil nature, and he should have commenced a civil action against the custodians of the arrest records which he desired to have expunged.[2] By filing a motion and mailing notice to the named parties Howe failed to properly effect service of process as required by Rule 4 of the North Dakota Rules of Civil Procedure such as would allow the district court to acquire personal jurisdiction over them. However, we conclude that the voluntary general appearance made by the Barnes County Sheriff, the Barnes County States Attorney, and the Barnes County Clerk of District Court, at the December 30, 1980, hearing submitted those parties to the personal jurisdiction of the district court under Rule 4(b)(4), N.D.R. Civ.P. Consequently, the district court had subject matter jurisdiction as well as personal jurisdiction over those parties so as to enable it to enter a valid jurisdictional order against them. Accordingly, we conclude that this appeal is properly before us and that we can render a decision on the merits of the issue raised.

Howe requests this Court to declare that an arrestee whose arrest does not result in a valid conviction is entitled to expunction of his arrest records. The adverse consequences which an individual may incur by the mere presence of an arrest record has been recognized by both federal and state courts. *I. e. Menard v. Saxbe*, 498 F.2d 1017 (D.C.Cir.1974); *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972). The extent of the potential harm was deftly stated by the Colorado Supreme Court in *Davidson*, 503 P.2d at 159–160:

"Notwithstanding the absence of a conviction, the mere record of arrest often

1. During oral argument on appeal, counsel for Howe conceded that Howe was not entitled to expunction of court records held by the Clerk of the District Court, and that part of the request for expunction has been abandoned by Howe.

2. Requests to expunge have arisen in a variety of procedural settings under which the courts have made a determination of the expunction issue on its merits. *See, United States v. Linn*, 513 F.2d 925 (10th Cir. 1975), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975), and

other cases cited therein. A number of courts have entertained, on its merits, a request for expunction of arrest records which was filed by motion as part of the original criminal action against the arrestee. *United States v. Schnitzer*, 567 F.2d 536 (2nd Cir. 1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *United States v. Linn, supra; United States v. Dooley*, 364 F.Supp. 75 (E.D.Pa.1973); *United States v. Kalish*, 271 F.Supp. 968 (D. Puerto Rico 1967).

works as a serious impediment and basis of discrimination in the search of employment, in securing professional, occupational, or other licenses, and in subsequent relations with the police and the courts. Most employers and employment agencies inquire whether an applicant has been arrested. An affirmative answer to this question, regardless of whether a conviction resulted, is often sufficient to deny the applicant further consideration. Where there are two or more applicants for the same job, those with previous arrest records clearly stand in a less favorable position than do other applicants.

"Moreover, it is common knowledge that a man with an arrest record is much more apt to be subject to police scrutiny—the first to be questioned and the last eliminated as a suspect in an investigation. If he is subsequently arrested, his arrest record may arise to haunt him in presentence reports, which often include not only prior convictions but also prior arrests. Prosecutors use arrest records in determining whether or not to formally charge an accused or even whether or not to allow a person to sit as a juror. And the existence of an arrest record often results in the denial of bail pending trial. The seriousness of the arrest record problem, although perhaps questionable in the past, is now too well documented to be doubted." 503 P.2d at 159–160. (Footnotes and case cites omitted.)

So too, however, the courts have recognized the legitimate need for retention of arrest records to assist in efficient law enforcement. *I. e. Loder v. Municipal Court for the San Diego Judicial District*, 17 Cal.3d 859, 553 P.2d 624, 132 Cal.Rptr. 464 (1976).

Although our legislature has enacted various statutes dealing with the retention, use, and destruction of public records, there is no statutory authority for expunction of arrest records in this state.[3]

Section 12–60–16, N.D.C.C., imposes a duty upon a law enforcement agency which transmits an arrest report to either the state or federal bureaus of investigation to furnish a report of the subsequent disposition of the matter:

"*12–60–16. Report of arrested person's transfer, release, or disposition of case.*—In any case in which a sheriff, police department, or other law enforcement agency makes an arrest and transmits a report of the arrest to the bureau of criminal investigation or to the federal bureau of investigation, it shall be the duty of such law enforcement agency to furnish a report to such bureaus whenever the arrested person is transferred to the custody of another agency or is released without having a complaint or accusation filed with a court.

"When a complaint or accusation has been filed with a court against such an arrested person, the law enforcement agency having primary jurisdiction to investigate the offense alleged therein shall receive the disposition of that case from the appropriate court and shall transmit a report of such disposition to the same bureaus to which arrest data has been furnished." § 12–60–16, N.D.C.C.

The foregoing provision, in the absence of additional legislation, demonstrates that the legislature, while recognizing the need to maintain accurate arrest records reflecting the ultimate disposition of an arrest, has not seen fit to provide for the expunction of arrest records when a conviction is not obtained.

Notwithstanding the absence of statutory authority for expunction, Howe asserts that the courts of this state have an inherent authority to order the expunction of arrest records for those who are not subsequently convicted on the ground that the retention

---

**3.** Of particular relevance is: Section 54–46–07, N.D.C.C., of the Records Management Act which provides that state records "shall not be mutilated, destroyed, transferred, removed or otherwise damaged or disposed of, in whole or in part, except as provided by law"; and Chapter 12–60, N.D.C.C., which creates a State Bureau of Criminal Investigation, and contains various sections requiring the bureau to maintain arrest records and law enforcement personnel to furnish such information to the bureau.

of such arrest records violates the exonerated arrestees' constitutional rights of privacy and of procedural due process. There is conflicting authority as to whether or not, in the absence of legislation, the courts have authority to order the expunction of arrest records. *See, Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223 (1976) (courts have the power to order expunction of arrest records without statutory authorization); *State v. Fish,* 265 N.W.2d 737 (Iowa 1978) (courts have no authority to order expunction of arrest records in the absence of statutory authorization); *See also,* annot., 46 A.L.R.3d 900 (1972).

The prevailing view of the federal judiciary is that there is an inherent authority in the courts to order expunction of arrest records which should be exercised only in the unusual or extreme case where the harm to the individual from the retention of his arrest records outweighs the government's need to maintain that record for law enforcement purposes. *See, Diamond v. United States,* 649 F.2d 496 (7th Cir., 1981); *United States v. Schnitzer,* 567 F.2d 536 (2nd Cir. 1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *United States v. Linn,* 513 F.2d 925 (10th Cir. 1975), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); *Sullivan v. Murphy,* 478 F.2d 938 (D.C.Cir.1973), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *Urban v. Breier,* 401 F.Supp. 706 (E.D.Wis.1975); *United States v. Dooley,* 364 F.Supp. 75 (E.D.Pa.1973). These courts have developed a case-by-case approach wherein the equities for and against expunging an arrest record are balanced and expunction is ordered only in extreme cases such as where an arrest is made without probable cause or is otherwise unlawful or where the statute under which an arrest is made is subsequently held to be unconstitutional. This limited right to expunction on a case-by-case basis has been followed by a number of state courts as well. *See, Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223 (1976); *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972); *Eddy v. Moore,* 5 Wash. App. 334, 487 P.2d 211 (1971).

Howe asserts two grounds allegedly entitling him to expunction of his arrest records—the constitutional right of privacy and the constitutional right of procedural due process of law.

First, Howe asserts that all persons whose arrests do not result in conviction have a constitutional right of privacy—a right to be left alone—which entitles them to expunction of their arrest records. Although the basis upon which the courts have provided an expunction remedy is varied and not always clearly articulated, a number of courts appear to have based the remedy on an individual's constitutional right of privacy. *See, United States v. Kalish,* 271 F.Supp. 968 (D.Puerto Rico 1967); *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972); *Eddy v. Moore,* 5 Wash. App. 334, 487 P.2d 211 (1971). However, we believe that the United States Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), has rejected the notion that there is a constitutional privacy right in a valid arrest record which would entitle an exonerated arrestee to any limitation of its retention by law enforcement officials.

In *Paul, supra,* a man was arrested in Louisville on a charge of shoplifting. Prior to the disposition of the charge, the Louisville Chief of Police published a flier, which was distributed to approximately 800 merchants in the Louisville metropolitan area, of "active shoplifters" which included the fact of Davis' arrest on the shoplifting charge. Subsequent to the distribution of the flier, the shoplifting charge against Davis was dismissed. Davis then filed a claim for relief against the Louisville Chief of Police under 42 U.S.C. § 1983 and the Fourteenth Amendment. In denying the claim for relief the United States Supreme Court discussed Davis' assertion that his constitutional right of privacy was violated by the disclosure of his arrest record:

> "While there is no 'right of privacy' found in any specific guarantee of the Constitution, the Court has recognized that 'zones of privacy' may be created by more specific constitutional guarantees

and thereby impose limits upon government power. See *Roe v. Wade*, 410 U.S. 113, 152–153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176–178 (1973). Respondent's case, however, comes within none of these areas. . . . In *Roe* the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' as described in *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

"Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this matter." 96 S.Ct. at 1166.

■ In light of the *Paul, supra*, decision we conclude that there is not a constitutional right of privacy which would entitle an exonerated arrestee to expunction of valid arrest records.

■ Second, Howe asserts that those whose arrest does not result in conviction have a constitutional right of procedural due process under the Fourteenth Amendment to have their arrest records expunged. He asserts that the Due Process Clause guarantees that no one shall be punished unless proven guilty of a criminal violation beyond a reasonable doubt. He then contends that retention of the arrest records of a person against whom the state has not obtained a valid criminal conviction constitutes "punishment" without affording this procedural due process guarantee. We are unpersuaded, irrespective of whether or not an arrestee is convicted, that the retention and authorized use of his valid arrest records by law enforcement personnel violates any procedural due process guarantee. In affording protection against unreasonable searches and seizures the Fourth Amendment requires probable cause as a prerequisite to making a valid arrest. However, irrespective of an arrestee's innocence or guilt, if his arrest is based upon probable cause under a valid criminal statute and if the arresting officers afford him all other substantive and procedural rights to which he is entitled the arrest is valid. In the absence of legislation stating otherwise, there is no basis upon which the retention or authorized use of his valid arrest records can be said to violate the arrestee's due process rights so as to entitle him to the expunction of those records.

■ Although we believe Howe's assertion of a right to expunction of arrest records is stated too broadly, we conclude that a more narrow right of expunction does exist. It is clear that the courts have the power to fashion a remedy, without legislative authorization, to vindicate the violation of a person's constitutional rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In the absence of statutory authorization for such relief, we believe the courts have authority, as well as an obligation, to expunge the arrest records of one who is wrongfully arrested in violation of his constitutional rights. The remedy of expunction should be provided, for instance, when an arrest is made without probable cause or when an arrest is based upon a criminal statute which is subsequently determined to be unconstitutional. In such instances the legitimate need to use the arrest records for law enforcement purposes is severely undermined by the fact that the arrest was invalid and should never have occurred. In such instances the arres-

tee's interest in expunction of the invalid arrest records to vindicate the violation of his constitutional rights far outweighs any governmental interest in the retention and use of his invalid arrest records. *See, Sullivan v. Murphy*, 478 F.2d 938 (D.C.Cir.1973), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). We hold that the courts of this state have the authority to order, and an arrestee who is not subsequently convicted is entitled to, expunction of arrest records when the arrest is unlawful in violation of the arrestee's constitutional rights.

The district court denied Howe's request for expunction on the ground that it was without authority to order such relief. In view of our holding, it is necessary, therefore, to remand this case for further proceedings to determine whether or not Howe was wrongfully arrested without probable cause or otherwise in violation of his constitutional rights so as to entitle him to expunction of his arrest records. We reverse and remand for further proceedings in accordance with this opinion.

PEDERSON, J., and MUGGLI, District Judge, concur.

HATCH and MUGGLI, District Judges, sitting in place of VANDE WALLE and PAULSON, JJ., disqualified.

PEDERSON, Justice, concurring specially.

Because I agree that the trial court erred in concluding as a matter of law that it had no jurisdiction to hear Mr. Howe's plea, I concur in the opinion authored by Chief Justice Erickstad. I am, however, constrained to add some comments.

The availability and the worth of "expunction" as a remedy should not be presupposed. As necessity is mightier than the law and is the mother of invention, the elimination of the evil complained of may well require the design of a new tool.

The paradox is evident. Courts are not free to legislate at will—courts need not always deny a remedy merely because the Legislature has failed to provide for it by statute. To deserve society's support, courts are obliged to recognize the deterring factors—we do not call them handicaps—which compel self-imposed judicial restraint. Free men and women can be injured by unwarranted invasion of privacy—whether we should call it a natural right or constitutional in scope has not been settled in the minds of judicial scholars. See *City of Grand Forks v. Grand Forks Herald, Inc.*, 307 N.W.2d 572 (N.D.1981). An ad hoc, one-step-at-a-time approach will head us in the right direction. The invasion of privacy may perhaps be remediable only by suit against the person who misuses information when there is no remedy that will actually withhold the information from that person.

HATCH, District Judge, concurring specially.

I concur in Chief Justice Erickstad's opinion, but with the understanding that on remand, the district court will only have jurisdiction over the Barnes County Sheriff, the Barnes County States Attorney, and the Barnes County Clerk of District Court.

SAND, Justice, concurring and dissenting.

I agree that a criminal case such as *State of North Dakota v. Henry Howe*, the one in question, cannot be converted into a civil case particularly where the criminal case has run its course and has terminated, as was the case here. On 1 August 1977 this court on appeal reversed Howe's conviction and remanded the case. The motion which ultimately came before this court on appeal was filed on 13 December 1980 and sought an order directing the sheriff of Barnes County, Bureau of Criminal Investigation, as well as other agencies in possession of arrest records, for alleged violations of §§ 12.1–09–01, 12.1–08–05, or 19–03.1–23, to return them to Henry Howe and to expunge any reference to such arrest from any official record. The motion also sought an order directing the clerk of court of Barnes County to expunge the record relating to the arrest of Henry Howe for alleged violations of § 12.1–08–05.

The above motion was filed more than three years after the conviction was set aside and the case was remanded. A criminal action has expired upon the final determination of the appeal. *State v. Jager*, 91 N.W.2d 337 (N.D.1958); *State v. Prince*, 66 N.W.2d 796 (N.D.1954). The courts lost jurisdiction of this case. See also, *John v. State*, 160 N.W.2d 37 (N.D.1968), and *State v. Gronlie*, 213 N.W.2d 874 (N.D.1973). It cannot be revived by a motion. This is not an instance where the motion was filed contemporaneously with the remand. Even then a problem would exist, particularly in the area of jurisdiction over the parties named in the motion.

Even where motions are permitted after trial has been completed there are certain limitations. For example, a motion for a new trial on newly discovered evidence may be heard if the motion is made within 30 days after discovery of the new evidence. But in any event it must be made within two years, unless the matter is on appeal, and then it must be heard within a certain time after the appeal has been resolved. Rule 33(d), NDRCrimP. Otherwise the matter must be heard sooner.

Similarly, a motion or application for reduction of sentence must be not only made but actually disposed of within 120 days after the entry of judgment because after the 120 days the court loses jurisdiction. Rule 35, NDRCrimP. *United States v. Addonizio*, 442 U.S. 178, 179, 99 S.Ct. 2235, 2237, 60 L.Ed.2d 805 (1979), and *United States v. Nunzio*, 430 A.2d 1372 (D.C.App. 1981).

It seems axiomatic and proper that in order for a motion to be heard and considered a basic action has to be pending unless there is a specific statute or rule providing that the proceedings may be initiated by motion. For example, this court in an amercement proceeding under § 28–21–19, NDCC, held that the statutory provision had to be followed strictly. The statute provided for the proceedings to be commenced with a motion, but the party proceeded with a regular action which this court held was improper. Other than by rule or statute a motion is proper only if an action is in existence so that the motion can be part of it. In *Anderson v. Gordon*, 9 N.D. 480, 83 N.W. 993 (1900), our court said that an order for an injunction could only be made in a pending case and that the same is true of a motion. In a criminal action the court does not continue to have jurisdiction such as we find in domestic relations. The court's jurisdiction ceases when the action has become terminated.

I agree with the following statement in Justice Erickstad's opinion:

"The relief requested by Howe is of a civil nature, and he should have commenced a civil action against the custodians of the arrest records which he desired to have expunged. By filing a motion and mailing notice to the named parties Howe failed to properly effect service of process as required by Rule 4 of the North Dakota Rules of Civil Procedure such as would allow the district court to acquire personal jurisdiction over them."

However, I cannot agree with the following statement:

"... we conclude that the voluntary general appearance made by the Barnes County Sheriff, the Barnes County State's Attorney, and the Barnes County Clerk of District Court, at the December 30, 1980, hearing submitted those parties to the personal jurisdiction of the district court under Rule 4(b)(4), N.D.R.Civ.P. Consequently, the district court had subject matter jurisdiction as well as personal jurisdiction over those parties so as to enable it to enter a valid jurisdictional order against them."

I cannot agree with this conclusion.

The record shows the following. After an opening remark the Court asked:

"Are all of those parties represented? I see you are, Mr. Howe?

"MR. HOWE: Yes, Your Honor.

"THE COURT: So you are represented—Are you appearing on your own behalf?

"MR. HOWE: I am appearing on my own behalf, yes.

"THE COURT: Mr. Paulson, are you appearing for whom?

"MR. PAULSON: I think I am probably appearing for the State's Attorney for Barnes County. I guess that would be on my own behalf. And I guess I am appearing for the Clerk of the District Court, Barnes County. And also for the Sheriff of Barnes County.

I did discuss this matter with the Attorney General's office just by way of note, and letter too, correspondence that I received in the last few days. They had a schedule conflict so they weren't going to appear. But they assisted me in preparing or furnishing me some material with respect to my making an oral response.

I discussed the propriety of making some type of return to this motion and they sort of agreed that it wasn't necessary. It seems like with all of these people joined in the thing that there would be more—at least an attempt to make a formal response. But we haven't made any formal response as such. But we are here, appearing to give—and I guess I have assumed representation for the other parties too, although I guess the Attorney General's office and Bureau of Criminal Investigation and Sheriff of Cass County can appear on their own. I guess I wasn't assuming representation for them. Let's say I am representing the Barnes County people.

"THE COURT: I think however, I will appoint you as counsel for all of the six including yourself.

"MR. PAULSON: I think the issues to be raised would be comparable with all six parties as joined as motionees, if that's the correct title. I will accept that."

Thereafter the court called upon Mr. Howe, who explained his position and repeatedly, in his argument, stated that this was a continuation or a final step in the criminal proceedings. Mr. Paulson then stated his position. No evidence was introduced.

These proceedings do not establish conformity with Rule 4 of the North Dakota Rules of Civil Procedure.

In the final analysis from the record as set out above, the parties involved did not voluntarily appear. An appearance was imposed upon them by the court in directing that the state's attorney represent the various parties. I cannot conceive that such discourse or procedure constitutes a voluntary appearance. If this constitutes a voluntary appearance, then it would behoove all parties in such instances to refrain from not appearing but to appear and make it a special appearance challenging jurisdiction. This is not contemplated by our rules of procedure. The courts, including the appellate courts, are to be champions of due process. If they fail in this, all else is for naught.

This case is substantially different than the case of *Bryan v. Miller*, 73 N.D. 487, 16 N.W.2d 275 (1944), in which an appeal for trial anew was taken to district court from justice court and the technical issue of having made a proper deposit in lieu of undertaking was raised. The parties appeared and challenged the procedure relating to the deposit. But in the instant case the parties appeared by court appointment of counsel for the parties.

The parties did not make a general appearance, rather the "appearance" was made by appointment of the court. Neither did the parties participate at the "trial." See *Olson v. Brodell*, 128 N.W.2d 169 (N.D. 1964), where party invoked jurisdiction of court to permit amendment to complaint. For further discussion on appearances, general and special, consult 5 Am.Jur.2d 1, et seq.

After reviewing the foregoing activities I am convinced that the proceedings as disclosed by the transcript do not in any manner describe any action which could be deemed a general appearance and even less a *voluntary* general appearance.

The proceeding as reflected by the transcript is more in harmony with a special appearance of the parties than with a general appearance or a voluntary general appearance. It was more of an involuntary appearance.

The denial of the motion by the district court should be affirmed without prejudice. If Howe wishes to proceed as contemplated by either the Civil Rules of Procedure or by statute, he should be permitted to do so. In that event, the court could devote its effort to the merits of the action rather than to procedural matters. Such procedure would not only be in complete harmony with judicial economy but would enhance it.