**UNITED STATES of America,**

v.

**Scott Tully KALISH.**

**Civ. No. 284–67.**

United States District Court
D. Puerto Rico.

Aug. 28, 1967.

Asst. U. S. Atty., Charles Figueroa, San Juan, P. R., for plaintiff.

Harvey B. Nachman, San Juan, P. R., for defendant.

## ORDER

CANCIO, Chief Judge.

On May 8, 1967, the defendant moved for an order to expunge and destroy the photographs and fingerprints taken by the United States Marshal after the defendant had voluntarily submitted himself to the jurisdiction of this Court. The Government opposed on the ground that the Attorney General of the United States was an indispensable party to the motion, inasmuch as the photographs and fingerprints were transferred to his custody. The defendant accordingly withdrew his motion and on May 23, 1967 filed a new motion requesting the same relief and serving the Attorney General of the United States, as well as the United States Attorney for this District. The motion has been argued and memoranda have been filed by both parties.

A brief review of the facts is necessary in order to clarify the issues involved herein. On April 15, 1967, Scott Tully Kalish, a selective service registrant, was ordered by his local draft board to report for induction in the United States Army on May 1, 1967. Prior to receipt of that induction notice, he

had been granted a deferment from induction into active military service pending completion of studies in an institution of higher learning.

After receipt of the induction notice but prior to the date he had to report for service, Kalish had received notice of acceptance into the Law School of the University of Puerto Rico. He alleged that he notified the Local Board orally and in writing and that under the then existing regulations of the Selective Service, 32 C.F.R. & 1624.1, and 1624.2, he was entitled to have his status reopened and reclassified, or, that in the denial thereof, he was entitled to a hearing before the Local Board. He further alleged that the Local Board refused to reopen or reclassify his status or to afford him a hearing.

On May 1, 1967 Kalish reported for induction. Counsel for Kalish was simultaneously preparing a petition for a writ of habeas corpus. The petition was filed and this Court issued an order on May 1, 1967, directing the Acting State Director of the U. S. Selective Service System for the Commonwealth of Puerto Rico to show cause on May 3, 1967 why the petitioner should not be released from custody and his classification reopened. The order to show cause was served that same afternoon, but when Kalish, on the advice of counsel, refused to step forward and be sworn in, he was released from custody. (Civil No. 284–67).

On May 3, 1967, the return day of the order to show cause, the Assistant United States Attorney informed the Court that there had been an agreement with Kalish's counsel to allow the latter to try to reopen the selective service proceedings, failing which petitioner would be sworn into the United States Army, after which he could again attempt to test the validity and constitutionality of his induction. This agreement to the contrary notwithstanding, an information was lodged against Kalish for failure to submit to induction pursuant to 50 U.S.C.A. App. § 462. The first notice that either Kalish or his attorney had received of this information and the arrest order was when they were present in Court on the return of the show cause order.

The accused took the stand and testified under oath that he had no intention of violating the laws of the United States; that his refusal to step forward and be sworn into the United States Army was based upon the advice of counsel; that his purpose in filing the habeas corpus petition was to secure due process of law and equal protection under the laws and regulations pertaining to the draft; that he voluntarily surrendered himself to the jurisdiction of the Court; and that he was willing to be inducted into the United States Army, then and there.

Nevertheless, the United States Attorney insisted that the accused be processed, arrested, fingerprinted and photographed. Within one half hour of this processing, Kalish was sworn into the United States Army. Another habeas corpus petition was filed the same day, May 3, 1967. The Honorable Peirson M. Hall, United States District Judge, sitting by special designation, refused to issue a show cause order directed to an officer of the United States Army and dismissed the petition (Civil No. 289–67). Kalish was transferred out of Puerto Rico the same evening. He has taken no appeal and is presently serving in the United States Army.

An analysis of the Government's position leads to the conclusion that it is founded upon the fact that there is no Congressional statute authorizing the return or destruction of the criminal identification of persons eventually found innocent or who are discharged without conviction. The policy argument, advanced from quotations from two Court of Appeals decisions,[1] is that fingerprinting and other identification is not punishment; that although burdensome, it

---

1. United States v. Krapf, 3 Cir. 1961, 285 F.2d 647, United States v. Kelly, C.C.A.2d 1932, 55 F.2d 67.

is a burden that must be borne for the common good.

■ There can be no denying of the efficacy of fingerprint information, photographs, and other means of identification in the apprehension of criminals and fugitives. Law enforcement agencies must utilize all scientific data in society's never-ending battle against lawlessness and crime. When arrested, an accused does not have a constitutional right of privacy that outweighs the necessity of protecting society and the accumulation of this data, no matter how mistaken the arrest may have been.

■ However, when an accused is acquitted of the crime or when he is discharged without conviction, no public good is accomplished by the retention of criminal identification records. On the other hand, a great imposition is placed upon the citizen. His privacy and personal dignity is invaded as long as the Justice Department retains "criminal" identification records, "criminal" arrest, fingerprints and a rogue's gallery photograph.

As Judge Augustus N. Hand said in a case relied upon by the Government: [2]

"It should be added that all United States attorneys and marshals are instructed by the Attorney General not to make public photographs, Bertillon measurements or finger prints prior to trial, except when a prisoner becomes a fugitive from justice, and are required to destroy or to surrender to the defendant all such records after acquittal or when the prisoner is finally discharged without conviction. There is therefore as careful provision as may be made to prevent the misuse of the records and there is no charge of any threatened improper use in the present case."

Unlike the situation described by Judge Hand, there is a threatened mis-use of the records in this case. And, unlike the attitude of the Attorney General in that case, the position of the Government here is that the accused who has not been convicted, and against whom no charges are pending, and who is serving in the United States Army, is entitled to no protection from this threatened misuse. No statute [3] nor regulation supports this contention. The United States Attorney's Manual reveals an awareness by the Attorney General of the inherent power of the District Court to order the return or destruction of such records.[4]

The Government argues that inasmuch as the movant's Army photographs and fingerprints are on file anyhow, the elimination of the judicial source of fingerprints and photographs will not completely wipe out the identification information. What the Government fails to consider is the affront on the personal dignity of the individual directly related to the source of the Justice Department's identification records. At some future date, use of these records may be needed for judicial or other governmental purpose. Whatever the use, should a citizen have a *criminal* identification on file, setting forth an arrest for the crime of failure to submit to induction, when the record discloses that he refused to step forward, on advice of counsel, in order to test what his attorney thought to be a valid constitutional right? Should a citizen be haunted by fingerprints labelled "criminal" or a rogue's gallery photographs, when he has no charges pending against him? I think not. The preservation of these records constitutes an unwarranted attack upon his character and reputation and violates his right of privacy; it violates his dignity as a human being.

It is, therefore,

Ordered, that the Attorney General of the United States shall forthwith destroy

---

2. United States v. Kelly, C.C.A.2d 1932, 55 F.2d 67, 70.

3. The state cases cited by the Government do not support its conclusions.

4. United States Attorney's Manual, Directive, Title 8–83, February 1, 1966, "Fingerprints".

the arrest records and identification records, including the fingerprints and photographs taken by the United States Marshal's office in the District of Puerto Rico on May 3, 1967 of Scott Tully Kalish and all copies thereof, now under his custody or maintained by the Identification Division of the Federal Bureau of Investigation, and it is further

Ordered, that said records or identification data shall not be transmitted to any other government or governmental agency or any person, and it is further

Ordered, that the Attorney General shall promptly notify this Court of the time, place and manner in which said records have been destroyed.