LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* THE COUNTY OF DU PAGE, Defendant-Appellee.

Second District   No. 78-63

Opinion filed October 11, 1979.—Rehearing denied November 19, 1979.

S. Louis Rathje and Gary L. Taylor, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and John A. Davidovich, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, as trustee, is the title holder of land classified as R-2 (single-family residence) under the zoning ordinance of the defendant, Du Page County. Plaintiff sought a declaratory judgment that the zoning ordinance was invalid as applied to the subject property and that the proposed use of the property for the construction of a restaurant was reasonable. The trial judge denied relief and the owner appeals.

The subject property is part of a larger lot, originally consisting of approximately two acres located at the northwest corner of the intersection of Illinois Route 53 and 56 (Butterfield Road) in Du Page County, which was the subject of a previous appeal in *Moist v. County of Du Page* (1973), 10 Ill. App. 3d 473. In that case the real party in interest was the Yale Development Co., which is the beneficiary of the present trust. In *Moist* we declared that the R-2 zoning was invalid as applied to the entire two-acre tract and established the reasonableness of the proposed use for a gasoline service station. We noted that the proposed station would use only about 35% of the parcel, that it would be located at the corner, and that there would be 80-84 feet of buffer zone between the service station activities and residential property to the west and north which could be used to provide screening of natural foliage. 10 Ill. App. 3d 473, 474.

In the judgment entered on November 1, 1977, dismissing this suit, the trial judge's findings included:

> "4. That there has been no change of circumstances or conditions to warrant a change in the zoning previously given to the subject property in the *Moist* case as a result of the opinion of the Appellate Court.

5. That the Plaintiffs [*sic*] have failed to overcome by clear and convincing evidence, the presumed validity of the Defendant's zoning ordinance as it applies to the Plaintiff's property."

The owner contends that the court erred in concluding that *Moist* barred this suit as *res judicata,* and further contends that the judgment on the merits was against the manifest weight of the evidence.

We first conclude that the present suit is not barred as *res judicata* by reason of our decision in *Moist.*

■■■ Preliminarily, we reject plaintiff's claim that the defendant has not properly raised the defense of *res judicata* because of failure of the proof of the former record. It is true that for *res judicata* to apply the judgment in the former action must not only be pleaded (*Svalina v. Saravana* (1930), 341 Ill. 236, 247), but that the party asserting the doctrine has the burden of proving the existence and character of the former judgment as well as its legal effect with relation to the matters alleged to be concluded by it. (*Svalina,* 341 Ill. 236, 247; *Wigoda v. Cousins* (1973), 14 Ill. App. 3d 460, 469, *reversed on other grounds* (1975), 419 U.S. 477, 42 L. Ed. 2d 595, 95 S. Ct. 541. See also *Gonyo v. Gonyo* (1973), 9 Ill. App. 3d 672, 674-75.) Here, the defendant did not introduce the complete transcript and court record of the *Moist* case. However, the defense was pleaded in the answer and argued both in connection with the motion to strike the answer and in briefs following the closing of proofs. Approximately 10 days after the filing of briefs the trial judge sent a letter to the parties inviting the placing in evidence of the record of the prior proceedings in *Moist.* The prior judgment is therefore before this court in the record. While plaintiff argues that this was the result of an unfair intervention by the trial judge, without a request to reopen proofs, we do not agree. Defendant on its own raised the *res judicata* argument in a brief in the trial court, and plaintiff's brief thereafter made the defendant aware of the possible need to introduce proof of the former record. Whether to reopen proofs is discretionary with the trial court. (*Department of Public Works & Buildings v. First National Bank* (1965), 61 Ill. App. 2d 78, 83; *Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 682-83.) The fact that the court acted *sua sponte* without waiting for a motion when the issue as pleaded was fully brought to its attention in the memorandums and arguments of both parties is, in our view, neither an unwarranted interference in the conduct of a trial nor an abuse of discretion.

■■■ Nevertheless we have concluded that the present suit is not barred by the doctrine of *res judicata.* The issue in every zoning case is whether the zoning ordinance is invalid in light of the particular facts. (See, *e.g., La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) For the former adjudication to be an absolute bar there must be identity of parties, subject matter and causes of action, which is particularly difficult

in zoning cases because the facts involved may change over time. (See *Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 104-05.) The doctrine, if applied strictly, could result in land being tied up in a given use long after the area surrounding it has changed. To remedy this the courts have treated the cause of action as involving those facts necessary to a determination of the validity of the zoning ordinance and have permitted a second attack if these facts have changed substantially since the first challenge. *Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 105; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 955.

The only cases cited and of which we are aware, however, deal with the application of *res judicata* when the validity of a zoning ordinance has been upheld and now faces a new challenge on the basis that circumstances have changed. But in this case, the previous adjudication was that the zoning ordinance was invalid and the defendant now asserts, not the finding of invalidity in the first court, but the *res judicata* effect of the order of authorizing the use of property as a gasoline station. Thus, this case presents the previously undecided issue of what should be the *res judicata* effect of a judgment order which not only finds the existing zoning invalid as to a subject property but which also enters a remedial order permitting a particular use which it finds reasonable.[1]

In order to decide this issue, it is necessary to understand the effect of such a remedial order in Illinois zoning law. The role of the court in forming a remedy when invalidity is found was established in *Sinclair Pine Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370. In *Sinclair* the supreme court held that rather than leaving the property unzoned a remedy should be formed according to the evidence offered in the case on the proposed alternate use of the land. The court weighed two undesirable effects in declaring the statute invalid: (1) that the land would remain unzoned, leading possibly to a multiplicity of suits before its final classification was settled, and (2) that rezoning by the courts into a general classification would result in the land being used in a manner inconsistent with the evidence presented in the case and unreasonable in light of the surrounding uses. 19 Ill. 2d 370, 378-79.

We find nothing in *Sinclair* to hold or imply that because a remedial

---

[1] In oral argument plaintiff appears to argue that if there is any *res judicata* effect of the *Moist* decision only the finding that the zoning ordinance of the county was invalid should be given any *res judicata* effect, and the county appears to agree with this argument in its oral response. We do not agree that the plaintiff may rely on the binding effect of the finding in *Moist* that the underlying R-2 zoning was invalid for this, in effect, urges the application of collateral estoppel or estoppel by verdict rather than the complete bar involved in *res judicata*. The party asserting collateral estoppel has the burden of pleading and proving it as is the case with *res judicata*. (*Svalina v. Saravana* (1930), 341 Ill. 236, 247; *City of Chicago v. Mendelson* (1973), 14 Ill. App. 3d 950, 955.) But the plaintiff has neither pleaded nor proved collateral estoppel and the issue is therefore waived.

use was approved as reasonable on part of a particular tract, with the further provision that screening should be provided to buffer the use from surrounding residential uses, all vacant portions of the tract must thereafter remain fallow. In *Moist* our decision did not necessarily limit the land in question to lie fallow. We stated:

"The proposed station would use only about 35% of the parcel and would be located at the corner. There would be an 80-foot buffer zone between the service station activities and the property to the west, and an 84-foot buffer to the property to the north. There are trees, bushes and natural foliage to the west and north on the parcel which would be retained and serve as a natural screen to the parcels on the north and west; and plaintiffs would be willing to provide additional plantings if ordered to do so. They would also be willing to provide that major engine overhauls, and use of the station for an auto laundry or car wash, or for storage of automobiles or rental of trailers or the like, on the premises would be prohibited if rezoning were granted." (10 Ill. App. 3d 473, 474.)

Essentially this statement is a holding that a service station with this degree of natural foliage and screening would be reasonable. Reference to the order of the trial court on remand in fact shows that the *Moist* trial court interpreted our decision as requiring only that the station be provided with adequate screening and that no major engine overhauls or the use of the station for an auto laundry or for storage of automobiles or the rental of trailers would be permitted. In essence, the language of the decision is merely a statement of the facts upon which we based our conclusion that the proposed use would be reasonable. It cannot be said to mean that any other use of land in question would be unreasonable.

Whether the R-2 zoning is invalid and the proposed use of a remaining portion of the property is reasonable should therefore not be decided on the basis of *res judicata* but rather upon a determination of whether the trial court's decision on the merits is contrary to the manifest weight of the evidence.

We therefore test the trial court's determination that the plaintiff has failed to overcome the presumed validity of the defendant's zoning ordinance as it applies to plaintiff's property under traditional zoning principles. Except for the building of the gas station on the corner, the general character of the area has not been shown to have appreciably changed from that considered and noted in our decision in *Moist*. (10 Ill. App. 3d 473, 473-74.) The subject property is that part of the two acres with which we dealt in *Moist*, consisting of an "L" shaped parcel of 36,000 square feet. It has frontage on the north side of Butterfield Road and the west side of Route 53. It is adjacent and contiguous to the gasoline station

which is located immediately on the northwest corner of the intersection of these two roads. Adjacent to the site, Route 53 and Butterfield Road each widen into six lanes, two lanes in each direction and two left turn lanes. Both are major arterial highways. To the north and northwest of the subject property, the land is developed in single-family residences, most located on large lots with access from interior streets. Directly to the west of the subject property is a vacant two-acre parcel which is zoned residential, followed by two single-family residences on large lots. Across Route 53, north of Butterfield Road, there is a service station on the corner and low-intensity, nonresidential uses extending for some distance along both roads. The land across Route 53 and south of Butterfield Road is in Downers Grove and is zoned for industrial and manufacturing uses, although it is presently being farmed. Across Butterfield Road from the subject property is a corner gas station and a community shopping center with a McDonald's restaurant just down Route 53 from the gas station.

After the gasoline service station was built on the property pursuant to *Moist*, the remaining land was left as screening and remained zoned R-2. The Yale Development Company has entered into a contract to sell to buyers conditioned on their ability to construct a Pizza Hut restaurant. This proposed restaurant would seat 90 persons and have parking facilities for 40 cars. Plaintiff proposes to screen the restaurant with a 6-foot chain link fence with redwood slats and with the natural foliage that remains. Entry and egress to the restaurant would be provided from Route 53 and Butterfield Road.

The proposed building would contain approximately 29,160 square feet or 6% of the subject property and be located 79 feet north of Butterfield Road and about 10 feet west of the west line of the parcel now occupied by the service station. This would leave approximately 60 feet between the building and the west line of the subject realty and 70 to 75 feet from the north line; approximately 40 parking spaces would be provided, apparently on the west side of the building.

The basic principles of zoning laws are well settled and will not be repeated. See *LaSalle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428-29.

As we have previously noted there has been no substantial change in the area since we held, in *Moist*, that R-2 zoning classification was invalid as applied to the subject property and the parcel now occupied by the Mobil gas station. The facts before us also indicate that the zoning of the subject parcel as R-2 is invalid. However, the decision that the zoning ordinance is invalid does not compel us to permit use of the property for the proposed restaurant. The plaintiff has sought declaratory relief that the ordinance is invalid insofar as it prohibits the use of the

property as a restaurant, but to be entitled to such relief the plaintiff must prove, additionally, that its proposed use is reasonable. (*Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 42.) In *Schultz v. Village of Lisle* the supreme court noted that all of the testimony might indicate that the proper classification of plaintiff's property was other than the classification under the ordinance; yet it was unnecessary to decide whether the zoning ordinance as it related to plaintiff's property was for that reason invalid when some intermediate use, not provided for in the zoning classification, might be considered proper. The court noted that the "question which was presented to the trial court and which is before this court is the reasonableness of permitting the requested use of plaintiff's property." (53 Ill. 2d 39, 42.) Thus, even if the R-2 zoning is invalid, the plaintiff is required to prove by clear and convincing evidence that the zoning ordinance is, as to it and the use which it proposes, arbitrary and unreasonable and without substantial relation to public health, safety, morals, or welfare. 53 Ill. 2d 39, 42.

■ The evidence in this case discloses that the block on which the subject property is located is a large lot, estate-type development, with the exception of the gas station on the corner. In addition, the area to the south, west of Route 53, is developed in smaller but still estate-type homes. The neighborhood is dominantly residential, except for development along Butterfield Road. The trend of use upon Butterfield Road is primarily light commercial. There is also some multifamily residential development. The uses, however, are primarily ones which generate most of their traffic during daylight hours. There was ample testimony that the introduction of a restaurant facility which has its peak hours at 7 p.m. and 10 p.m. would disrupt the residential quality of the neighborhood. The evidence was not clear and convincing in support of the plaintiff's claim that the zoning ordinance is as to it arbitrary, unreasonable and without substantial relation to public health, safety, morals or welfare. We therefore hold that the prohibition of the use of plaintiff's property for a restaurant as proposed was properly declared.

Viewing the entire record we cannot say that the trial court's decision upholding the county zoning ordinance is against the manifest weight of the evidence, and we therefore affirm.

Affirmed.

NASH and LINDBERG, JJ., concur.