THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN CARROCCIA, Defendant-Appellant.
Second District   No. 2—03—0465

Opinion filed October 18, 2004.

R. Mark Gummerson, of Gummerson & Rausch, L.L.C., of Woodstock, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Julie A. Shea, of Chicago, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, John Carroccia, was arrested and charged with first-degree murder (720 ILCS 5/9—1(a) (West 2000)). After a jury trial, he was acquitted. Defendant petitioned under section 5(a) of the Criminal Identification Act (Act) (20 ILCS 2630/5(a) (West 2002)) to expunge the records of his arrest. The trial court denied the petition with prejudice. Defendant appeals, arguing that (1) the trial court abused its discretion in denying the petition; and (2) even if the trial court properly denied the petition, it erred in doing so with prejudice. The State argues that the trial court acted properly, but agrees with defendant that the judgment should have been entered without prejudice. We affirm the denial of the petition to expunge, and we

conclude that the trial court did not err in denying the petition with prejudice. However, we find that the doctrine of *res judicata* does not bar defendant from filing a new petition for expungement alleging additional facts not extant on the date the trial court denied defendant's initial petition to expunge.

On June 2, 2000, defendant was arrested by the Kane County sheriff's department and charged with the first-degree murder of Hampshire police officer Gregory Sears. On March 27, 2002, a jury found defendant not guilty. On October 4, 2002, defendant filed his petition to expunge. The petition alleged that because defendant had never been convicted of any criminal offense or municipal ordinance violation, had never been arrested for any offense other than the murder of Sears, and had no pending criminal charges against him, the trial court had the power to expunge his arrest records.

The State responded that the court should preserve defendant's arrest records. The State reasoned that because defendant was 52 years old and had "no significant record of employment," he had little need to have the records destroyed. Moreover, under *People v. Wells*, 294 Ill. App. 3d 405 (1998), several factors supported preserving the records. These included the strength of the evidence against defendant; the relatively short time since his arrest; and defendant's ongoing federal civil rights suit (see 42 U.S.C. § 1983 (2000)) against the Kane County sheriff's department, the Village of Hampshire, and others.

The trial court did not hear evidence. After arguments, the court denied defendant's petition. Relying on *Wells*, the court conceded that defendant's age and lack of criminal history favored expungement. However, having presided over defendant's trial, the court recalled that "there was a lot of circumstantial evidence" and it believed that the State "had every right to proceed [with the case against defendant] on the basis of the *** evidence." In addition, the court opined that because defendant worked for a family business, expungement was not necessary for "employment purposes." The court also noted that, considering the seriousness of the charge, little time had passed since defendant's arrest. Furthermore, the court found no specific evidence that defendant suffered any adverse consequences. Finally, the court noted that defendant's federal complaint asked to have his arrest records expunged. While the trial judge doubted that the federal court could grant such relief, he thought it wise to retain the records while the federal suit was in progress.

Defendant's attorney asked if the judgment would be without prejudice so that defendant could again seek expungement of his arrest records after the federal case was over. The trial judge responded that he would deny the petition with prejudice but that defendant

could later "file an appropriate motion" against the judgment so that relief would be available if circumstances changed. Defendant's attorney responded that he would have to file the motion within 30 days or lose the right to appeal. The trial judge said that defendant could file the motion within 30 days and "let it sit for whatever number of years." Thus, the court denied the petition with prejudice.

Defendant timely moved to reconsider. He argued that *Wells*'s multifactor balancing test applies only if, as in *Wells*, the defendant was found not guilty by reason of insanity (NGRI). Defendant observed that *Wells* adopted the holding of *Commonwealth v. W.P.*, 417 Pa. Super. 192, 612 A.2d 438 (1992), also an NGRI case, "when addressing petitions for expungement by defendants found NGRI." *Wells*, 294 Ill. App. 3d at 409. Defendant added that an NGRI verdict is proof beyond a reasonable doubt that the person has committed a bad act and thus may pose a danger to the public, while an outright acquittal is proof of nothing. See *W.P.*, 417 Pa. Super. at 201-02, 612 A.2d at 442-43. Thus, defendant maintained, he was presumptively entitled to the expungement of his arrest records.

Defendant also asserted that, in any event, the trial court should not have denied the petition with prejudice. Defendant reasoned that because *Chesler v. People*, 309 Ill. App. 3d 145 (1999), which applied *Wells* to an acquittal, held that postarrest behavior is a relevant consideration, the court should not have prevented him from later showing that his good conduct tipped the balance in favor of expungement.

At the hearing on defendant's motion, the State again asserted that defendant's arrest records should not be expunged as long as he still sought relief in federal court against the arresting authorities. The State also argued that *Wells* and *Chesler* supported denying relief even though defendant had been acquitted outright. Defendant replied that the defendants in the federal suit could obtain a protective order to preserve needed evidence but that he ought not be stigmatized or disadvantaged by the maintenance of his arrest records. The trial judge concluded that *Wells* and *Chesler* applied and that the pertinent factors favored preserving the arrest records. After the trial court denied his motion to reconsider, defendant timely appealed.

On appeal, defendant argues first that the trial court abused its discretion in refusing to expunge his arrest records. Defendant reasons that because the State never rebutted the presumption of innocence, he should not suffer the consequences of an arrest record. Relying in part on Pennsylvania case law, including *W.P.*, defendant urges us to limit *Wells* to defendants who have been found NGRI. Defendant asserts that one who was acquitted outright should be granted the ex-

pungement of his arrest records unless the State proves a compelling need to preserve them. Defendant maintains that here the State proved no such need.

■ We start with section 5(a) of the Act, which, as pertinent here, reads:

> "Whenever an adult or minor prosecuted as an adult, not having previously been convicted of any criminal offense or municipal ordinance violation, charged with a violation of a municipal ordinance or a felony or misdemeanor, is acquitted or released without being convicted, *** the Chief Judge of the circuit wherein the charge was brought, any judge of that circuit designated by the Chief Judge, or *** the presiding trial judge at the defendant's trial *may* upon verified petition of the defendant order the record of the arrest expunged from the official records of the arresting authority and the Department [of State Police] and order that the records of the clerk of the circuit court be sealed until further order of court upon good cause shown and the name of the defendant obliterated on the official index required to be kept by the circuit court clerk under Section 16 of the Clerk of Courts Act ***." (Emphasis added.) 20 ILCS 2630/5(a) (West 2000).

Defendant's right to relief depends on the meaning of this language. The construction of a statute is a question of law that we review *de novo. Branson v. Department of Revenue,* 168 Ill. 2d 247, 254 (1995). We seek to ascertain the legislature's intent. *In re Detention of Lieberman,* 201 Ill. 2d 300, 307 (2002). Generally, the words the legislature used are the best guide to its intent, and unambiguous language must be given its natural import. *Kunkel v. Walton,* 179 Ill. 2d 519, 533-34 (1997). As it happens, these general principles are of limited use here.

Section 5(a) of the Act spells out in detail the criteria that a defendant must meet to be eligible for the expungement of his arrest records, but it says little about how the trial court is to decide his request. Clearly, the court is not required to grant expungement to anyone who meets section 5(a)'s explicit requirements. Rather, the court *may* grant such relief. Thus, the decision to expunge is within the trial court's discretion. *Chesler,* 309 Ill. App. 3d at 150; *Wells,* 294 Ill. App. 3d at 408-09. However, section 5(a) does not indicate the breadth of the trial court's discretion or the criteria that the court is to apply in exercising its prerogative. Therefore, we turn to the case law.

*Wells* and *Chesler* are the principal opinions in Illinois to address "what factors are appropriate for consideration when ruling on a petition [for expungement]" (*Wells,* 294 Ill. App. 3d at 409). In *Wells,* the defendant was charged with murder and attempted murder, found

NGRI, and committed to a mental health facility. Five years after his unconditional release, he petitioned to have his arrest records expunged. The trial court denied the petition, and he appealed. The appellate court held first that the Act applied to the defendant. The NGRI verdict was not an acquittal because the State had proved every element of the offense beyond a reasonable doubt. Nonetheless, the defendant had been relieved of criminal liability, so that when his treatment ended, he had been "released without a conviction" (20 ILCS 2630/5(a) (West 1994)). *Wells*, 294 Ill. App. 3d at 408.

The *Wells* court next addressed whether the trial court had abused its discretion in denying expungement. In deciding what criteria the trial court should have considered, *Wells* followed *W.P.* There, the defendant was found NGRI of aggravated assault and other felonies. Pennsylvania had no expungement statute, but its courts had created the remedy out of due process concerns. See *Commonwealth v. Wexler*, 494 Pa. 325, 329, 431 A.2d 877, 879 (1981); *Commonwealth v. Capone*, 282 Pa. Super. 458, 460, 422 A.2d 1383, 1384 (1980). Under *Wexler*, if the defendant had been acquitted, the Commonwealth had to prove a compelling reason for retaining his arrest records. See *Wexler*, 494 Pa. at 331, 431 A.2d at 880. To decide whether the Commonwealth had met this burden, trial courts were to consider the pertinent circumstances, including, but not limited to:

> " 'the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied.' " *Wexler*, 494 Pa. at 330, 431 A.2d at 879, quoting *Commonwealth v. Iacino*, 270 Pa. Super. 350, 358, 411 A.2d 754, 759 (1979).

The *W.P.* court adhered to *Wexler*'s rule and applied its balancing test. *W.P.*, 417 Pa. Super. at 197-98, 612 A.2d at 440-41. It held that the State had met its burden. The court emphasized that, unlike an outright acquittal, a verdict of NGRI necessarily implies a finding that the defendant " 'did the act.' " *W.P.*, 417 Pa. Super. at 199-200, 612 A.2d at 442. In *W.P.*, the "act" was violent, and the defendant was still being treated for the mental illness that caused it. Thus, the public safety outweighed the personal interest of the defendant, who (unlike one who is acquitted outright) was not even seeking to preserve his "good name." *W.P.*, 417 Pa. Super. at 202, 612 A.2d at 443.

*Wells* adopted "the approach established by [*W.P.*] when addressing petitions for expungement by defendants found NGRI." *Wells*, 294 Ill.

App. 3d at 409. Applying the *Wexler/W.P.* test, the court upheld the trial court's finding that protecting the public against the defendant, who had killed one person and tried to kill another, outweighed the defendant's good behavior since the arrest, his advanced age, and his educational achievements. *Wells*, 294 Ill. App. 3d at 410.

In *Chesler*, the defendant sought to expunge the records of his arrests in three separate cases. Only one case had resulted in an acquittal. In the other two cases, the charges were dismissed after the defendant completed either supervision (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—21) or a special program. *Chesler*, 309 Ill. App. 3d at 147. The principal issue in *Chesler* was whether the defendant's behavior after he was acquitted in the first case was relevant to whether the trial court should expunge the arrest records in that case. In holding that a defendant's "postdisposition behavior may be relevant *** [even] where the [defendant] was found not guilty" (*Chesler*, 309 Ill. App. 3d at 151), the court adopted the balancing test of *Wells* and affirmed the judgment denying the defendant's petition. *Chesler*, 309 Ill. App. 3d at 151-52.

Here, defendant and the State disagree about the scope of *Wells's* holding and the soundness of *Chesler*. Defendant maintains that *Wells* applied the *Wexler/W.P.* balancing test only to records in NGRI cases and that *Chesler* erred in extending *Wells* to petitions by acquitted defendants. Defendant observes that *Wells* states only that the *Wexler/ W.P.* test applies to defendants found NGRI. *Wells*, 294 Ill. App. 3d at 409. He also notes that *Wells* relies on Pennsylvania case law and that, when *Wells* was decided, the Pennsylvania Supreme Court had already ruled that a defendant is automatically entitled to relief in a case where he was acquitted. See *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997).[1]

Defendant also maintains that while a balancing test may make sense if the underlying proceedings did not terminate in an acquittal, it is unfair to subject an acquitted defendant to the harms that may flow from the preservation of his arrest records. Courts have acknowledged a variety of such potential injuries, such as damage to the person's dignity or reputation (see *United States v. Kalish*, 271 F.

---

[1]Defendant also argues that *Chesler* misreads section 5(a) by holding that a defendant must show "good cause" for expungement. See *Chesler*, 309 Ill. App. 3d at 149. We agree with defendant and with *People v. Satterwhite*, 319 Ill. App. 3d 931, 934-35 (2001), that section 5(a) requires that there be "good cause shown" (20 ILCS 2630/5(a) (West 2002)) only before the trial court reopens circuit court records that have been sealed pursuant to an order under section 5(a).

Supp. 968, 970 (D. P.R. 1967)), and lessened opportunities for schooling, employment, credit, and professional licensing (see *Capone*, 282 Pa. Super. at 461, 422 A.2d at 1385; *Commonwealth v. Malone*, 244 Pa. Super. 62, 68, 366 A.2d 584, 588 (1976)). Also, courts have observed that police departments that retain a person's arrest records may be more likely to focus on him or even to arrest him in connection with a later investigation and may use his photograph in a lineup shown to crime victims or witnesses. See *Davidson v. Dill*, 180 Colo. 123, 127, 503 P.2d 157, 159 (1972); *Malone*, 244 Pa. Super. at 68, 366 A.2d at 588; *Eddy v. Moore*, 5 Wash. App. 334, 344, 487 P.2d 211, 216 (1971). Defendant reasons that because an outright acquittal proves nothing—not even that the defendant "did the act"—one who has been acquitted should be restored to the position he enjoyed before his arrest unless the State shows compelling reasons for the court to do otherwise.

The State responds that *Wells* and *Chesler* apply to expungement proceedings of all sorts, including one where the defendant was acquitted. The State argues that although defendant raises all manner of disabilities that *might* result from his having an arrest record, there is no evidence that he is actually suffering any such ills, while the defendants in the federal civil suit may be harmed if the records are destroyed. Therefore, the State concludes that under the balancing test of *Wells* and *Chesler*, the trial court did not abuse its discretion in refusing to expunge defendant's arrest records.

Although the *Wells* decision involved a defendant who was found not guilty by reason of insanity, the court in *Chesler* extended application of the *Wells* analysis to individuals who had been acquitted of the offenses with which they had been charged. *Chesler*, 309 Ill. App. 3d at 150-52. We agree that the balancing test adopted by the *Wells* court in NGRI cases also applies where the defendant is acquitted.

Defendant notes that courts in Pennsylvania have limited the application of the balancing test developed in *W.P.* to those cases in which litigation against the defendant has been terminated without conviction, except in those cases in which the defendant was acquitted. See *D.M.*, 548 Pa. at 136, 695 A.2d at 773 (holding that a defendant who is acquitted is automatically entitled to the expungement of his arrest record). Accordingly, defendant argues that the basis for application of the *W.P.* balancing test in *Chesler* is no longer persuasive. We find defendant's reliance on *D.M.* unavailing. As discussed above, because Pennsylvania has no expungement statute, the right to expungement in that state was born out of due process concerns. See *Wexler*, 494 Pa. at 329, 431 A.2d at 879. Apparently, in the absence of any legislative authority to the contrary, the Pennsylvania Supreme Court determined

that a defendant who is acquitted is automatically entitled to expungement. *D.M.*, 548 Pa. at 136, 695 A.2d at 772-73. In contrast, here in Illinois, expungement is a creature of legislative enactment (*People v. Thon*, 319 Ill. App. 3d 855, 862 (2001)). More importantly, section 5(a) by its terms strongly suggests that there is no presumptive right to expungement even after an acquittal. Section 5(a) does not even make all defendants *eligible* to seek the expungement of arrest records in cases that resulted in acquittals. See *Chesler*, 309 Ill. App. 3d at 150 (noting that the Act's permissive language shows that the statutory criteria establish eligibility for, rather than entitlement to, expungement). Instead, it limits the right to defendants who have never been convicted of any criminal offense or municipal ordinance violation. 20 ILCS 2630/5(a) (West 2002). Thus, under section 5(a), a defendant who has a prior conviction, even of a misdemeanor, is barred from seeking the expungement of arrest records from a case in which he was acquitted, even if his arrest was illegal. Thus, we conclude that the legislature attached little significance to the presumption of innocence *per se*.

■ Because the legislature did not intend to create an entitlement to expungement following an acquittal, we reject defendant's contention that, where an individual petitions for expungement following acquittal, the State has the burden of showing a compelling reason why his or her records should not be expunged. There is simply no presumption under the Act or *Wells* that a criminal arrestee who is acquitted should have the arrest expunged absent the State's showing of a compelling interest in maintaining the records. Indeed, defendant cites no such language in the Act.

■ Turning, then, to an application of the factors outlined in *Chesler* and *Wells* to the facts of this case, we note that the trial court is vested with broad discretion in ruling on petitions to expunge. *Chesler*, 309 Ill. App. 3d at 152; *Wells*, 294 Ill. App. 3d at 408-09. In rejecting defendant's petition, the trial court explicitly relied on the factors set forth in *Wells* and concluded that they did not support expungement. In favor of expungement were defendant's age and lack of a criminal history. However, having presided over defendant's trial, the court recalled that "there was a lot of circumstantial evidence" and that it believed that the State "had every right to proceed [with the case against defendant] on the basis of the *** evidence." The court also found that it would be wise to retain defendant's records during the pendency of defendant's federal lawsuit, which also included an expungement request. In addition, the court considered that because defendant worked for a family business, expungement was not necessary for "employment purposes." The court also noted

that not much time had passed since defendant's arrest, and it found no specific evidence of any adverse consequences. Based on the record before us, we are unable to say that the trial court abused its discretion in denying defendant's petition to expunge. See *Chesler*, 309 Ill. App. 3d at 153 (applying abuse of discretion standard in reviewing trial court's ruling on petition to expunge).

We are cognizant that the *D.M.* court voiced reservations about applying the five factors identified in *W.P.*, particularly the first one, to a situation in which the defendant has been acquitted. The court stated that "it [is] improper to go behind a verdict of acquittal and purport to assess the strength of the prosecution's case" and "there is no justification to search for reasons to undermine the verdict." *D.M.*, 548 Pa. at 136, 695 A.2d at 772-73. However, the *Chesler* court pointed out that a finding of not guilty does not mean that the defendant is innocent; rather, it reflects the prosecution's failure to meet its burden to prove guilt beyond a reasonable doubt. *Chesler*, 309 Ill. App. 3d at 150, relying on *People v. Smith*, 185 Ill. 2d 532, 545 (1999); see also *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 79 L. Ed. 2d 361, 368, 104 S. Ct. 1099, 1104 (1984) ("[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt"). In addition, we note that the strength of the prosecution's case against the defendant is but one factor to consider in ruling on a petition to expunge and that the trial court in this case admitted that it did not give that factor "a great deal of weight."

We also reject the contention of both defendant and the State that the trial court erred in denying with prejudice defendant's petition to expunge. Both parties presume that because new facts or circumstances may arise in the future, defendant should be allowed to refile a petition to expunge. We agree with this proposition. However, the parties are under the mistaken assumption that the trial court's decision to deny the petition with prejudice automatically forecloses defendant from seeking expungement at a future date.

The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the parties or their privies on the same cause of action. *Sterling v. Rockford Mass Transit District*, 336 Ill. App. 3d 840, 846 (2003). In order for *res judicata* to apply, three requirements must be satisfied. First, there must be a final judgment on the merits rendered by a court of competent jurisdiction. Second, there must be an identity of cause of action. Third, there must be an identity of parties or their privies. *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92 (2001). However, the doctrine of *res*

*judicata* will not apply in situations where the facts change over time. See, *e.g., La Salle National Bank v. County of Du Page*, 77 Ill. App. 3d 562, 564-65 (1979) ("For [*res judicata* to apply] there must be identity of parties, subject matter and causes of action, which is particularly difficult in zoning cases because the facts involved may change over time. [Citation.] The doctrine, if applied strictly, could result in land being tied up in a given use long after the area surrounding it has changed"). In addition, this court has held that *res judicata* does not bar a subsequent action where the court in the earlier action expressly reserved the litigant's right to assert its claim at a later time. *Cabrera*, 324 Ill. App. 3d at 92. Both of these exceptions to the doctrine of *res judicata* are particularly relevant here.

Notably, because expungement depends on all the facts of the case, including those that have arisen since the acquittal, changing circumstances may strengthen defendant's case in a variety of ways that may not be foreseeable now. One change that *is* foreseeable is the eventual resolution of defendant's federal civil rights suit, after which the State may choose not to oppose a petition for expungement. Moreover, even though the trial court entered its order with prejudice, it appears from the judge's comments that he may have intended to allow defendant a chance to refile or relitigate his petition. Under these circumstances, *res judicata* would not apply even though the trial court's judgment was on the merits and the dismissal was therefore with prejudice. See *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1017 (1989) ("*Res judicata* should only be applied where fairness and justice require and only to facts and conditions as they existed when judgment was entered").

For the reasons set forth above, we affirm the judgment of the circuit court of Kane County in its entirety. We also determine that *res judicata* will not be available as a defense should defendant file a new petition to expunge based on new facts and circumstances not extant on the date the trial court denied defendant's original petition.

Affirmed.

CALLUM, J., concurs.

PRESIDING JUSTICE O'MALLEY, specially concurring:

I agree with the result that the majority reaches but have significant disagreement regarding the bounds of discretion that a trial court may exercise in deciding whether to expunge arrest records pursuant to section 5(a) of the Criminal Identification Act (Act) (20 ILCS 2630/5(a) (West 2002)). In my view, the broad discretion adopted by the majority from *People v. Wells*, 294 Ill. App. 3d 405 (1998), and

*Chesler v. People*, 309 Ill. App. 3d 145 (1999), is not a proper construction of the legislative intent but, instead, is more nearly at odds with that intent. I would hold that under the Act, a trial court's discretion to expunge arrest records must be based on all the pertinent factors but should be exercised only upon proof of actual or probable injury from the denial of expungement, thereby construing the Act in accordance with the more selective standard of the federal courts. In this case, therefore, because defendant has not alleged or proved any special circumstances that would warrant expungement, I would hold that the trial court did not err in denying his petition.

The majority's exposition of development of *Wells* and *Chesler* (352 Ill. App. 3d at 1118-1120) provides a sufficient grounding for my analysis. Preliminarily, I note that the language of the Act does not compel either a broad or a narrow construction of the trial court's power of expungement. As the majority has observed, section 5(a) simply says that the trial court "may" grant a petition. 352 Ill. App. 3d at 1118. It is a fair inference that, by the use of such general terminology, the legislature intended the courts to "fill in the gaps" by defining the trial court's discretion more precisely. Indeed, this is exactly the assumption of *Wells* and *Chesler*.

In addition, the majority noted that "under section 5(a), a defendant who has a prior conviction, even of a misdemeanor, is barred from seeking the expungement of arrest records from a case in which he was acquitted, even if his arrest was illegal." 352 Ill. App. 3d at 1122. From this, I also conclude that the legislature attached little significance to the presumption of innocence *per se*. Thus the legislature declined the opportunity to equate an acquittal with the right to the expungement of the related arrest records.

With these considerations in mind, I now turn to the federal case law of expungement. As in Pennsylvania, expungement in the federal system is (with exceptions not pertinent here) a creature of the judiciary. See *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975). This form of judicial relief "is committed to the discretion of the trial court, but it is not a remedy to be granted frequently." *United States v. Friesen*, 853 F.2d 816, 817-18 (10th Cir. 1988). The trial court's decision must still rest on the facts of each case rather than on any definitive set of criteria (*Diamond v. United States*, 649 F.2d 496, 498-99 (7th Cir. 1981); *United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976)), and the trial court must balance the considerations for and against granting relief (*Diamond*, 649 F.2d at 499; *Linn*, 513 F.2d at 927). Nevertheless, the defendant must make a "factual showing of harm or 'extreme circumstances.' " *Friesen*, 853 F.2d at 817. Such a

standard is not satisfied by the mere fact of an acquittal. *Diamond*, 649 F.2d at 498; *Linn*, 513 F.2d at 927-28.[2]

*Friesen* illustrates the federal rule and its application. There, the defendant, an attorney, was acquitted of conspiring to manufacture cocaine. He moved to expunge his arrest records, alleging in general terms that he was being " 'grievously injured *** in terms of employment availability, reputation in the community, and possible denial of professional licensing.' " *Friesen*, 853 F.2d at 817. Without taking evidence, the trial court granted expungement. The government appealed. The appellate court reversed and remanded the cause for a full evidentiary hearing.

The appellate court reasoned that the defendant's mere allegation of potential harm was an insufficient ground for expunging his arrest records, even though he had been acquitted. Prior cases had established that expungement would have been proper had the arrest itself been tainted by a clear lack of probable cause (*Friesen*, 853 F.2d at 817, citing *Sullivan v. Murphy*, 478 F.2d 938 (D.C. Cir. 1973)), by an improper harassing motive (*Friesen*, 853 F.2d at 817, citing *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967)), or by being based on an unconstitutional statute (*Friesen*, 817 F.2d at 817, citing *Kowall v. United States*, 53 F.R.D. 211 (W.D. Mich. 1971)). However, the defendant's arrest had been lawful, and there was sufficient evidence of the defendant's guilt for the jury to consider. Thus, as in *Linn*, there was no reason to conclude that the defendant had been harassed or unfairly singled out, or that his constitutional rights had been violated. *Friesen*, 853 F.2d at 818; see *Linn*, 513 F.2d at 928.

The court also rejected the defendant's assertion that the *possible* harm to his reputation, employment opportunities, or professional license supported the trial court's order of expungement. Observing that the trial court had not actually taken evidence, the appellate court concluded that there was "no factual basis in this record which supports these assumptions." *Friesen*, 853 F.2d at 818. However, the court remanded the cause to give the defendant a chance to prove that he was in fact being "grievously injured" and that these injuries were so severe as to create "unusually compelling circumstances" that might justify relief. *Friesen*, 853 F.2d at 818. Thus, typical problems with employment and professional licensing opportunities are not enough; rather, they must rise to the level of "unusually compelling circumstances" to warrant expungement.

---

[2]At least two states have also adopted the restrictive federal standards for expungement. See *State v. Howe*, 308 N.W.2d 743, 748-49 (N.D. 1981); *State v. Motchnik*, 149 Vt. 113, 539 A.2d 548 (1987).

As *Friesen* illustrates, the discretion of the federal courts to order expungement is not broad, but the courts are nonetheless empowered to consider any pertinent circumstances. Generally, however, even a defendant who has been acquitted may not have the records of his arrest expunged unless he demonstrates the existence of extreme circumstances warranting the expungement, such as that the arrest *itself* was improper or that he has suffered or likely will suffer substantial harm from the retention of the records. In such a case, the defendant has proved that either (1) the State has committed an independent wrong; or (2) he faces an undue injury that outweighs the State's interest in law enforcement.

Adopting these standards would strike a proper balance between the needs of law enforcement and the rights of defendants to be free of undue prejudice from the retention of their arrest records and properly give effect to the legislative intent embodied in section 5(a) of the Act. Moreover, the typical potential harm or injury of retaining arrest records should be the province of the legislature to address. As the majority observes, courts have acknowledged a variety of such potential injuries, such as damage to the person's dignity or reputation (see *United States v. Kalish*, 271 F. Supp. 968, 970 (D. P.R. 1967)), or lessened opportunities for schooling, employment, credit, and professional licensing (see *Capone*, 282 Pa. Super. at 461, 422 A.2d at 1385; *Commonwealth v. Malone*, 244 Pa. Super. 62, 68, 366 A.2d 584, 588 (1976)). If, for instance, the legislature considers it improper to consider a person's arrest record when determining his or her eligibility for a professional license, it is free to ban such consideration. Of course, the fact that the legislature is unlikely to do that underscores the caution courts should exercise in this area. What is likely is that the legislature would enact a comprehensive scheme of professional licencing that would detail how to consider arrest records in connection with professional licences. Such a scheme would logically treat different kinds of licences differently. Legislatures, not courts, are equipped to enact such detailed comprehensive schemes. See, *e.g.*, *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441, 462 (2002) ("the General Assembly has broad regulatory power ***, and it is within the discretion of the legislature to not only determine what is required in the public interest and welfare, but also to determine the measures needed to secure such interest").

If the legislature considers it improper for employers to inquire into prospective employees' arrest records, it should outlaw that practice directly. Once again, of course, the legislature has not done so and is unlikely to do so. That approach would likely cause less confusion and uncertainty than destroying one source of accurate informa-

tion while still allowing employers to rely on that information. To put the matter concretely: what if a person whose arrest record has been expunged is asked by a potential employer, "Have you ever been arrested?" May the person reply "no" because the official record of his arrest has been destroyed? Or must he be strictly factual and say "yes" even though one purported aim of expungement is to protect him from having this information used to his detriment? In any event, I agree that it is a fair assumption that arrest records cause harm to nearly everyone who has such a record. The legislature, wisely in my view, has not seen fit to follow the Pennsylvania case law that grants an expungement to any and all defendants who are acquitted (see, e.g., *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997) (expungement automatic for acquitted defendant); *Commonwealth v. W.P.*, 417 Pa. Super. 192, 612 A.2d 438 (1992) (presumption in favor of expungement for defendant whose prosecution terminated without conviction); *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877 (1981) (same)) and decrees that the typical harm of an arrest record warrants expungement. Since, e.g., nearly everyone will experience employment problems due to an arrest record, it is not enough to cite that as a justification for expungement. Rather, there must be "extreme circumstances" to warrant the expungement of an arrest record.

This conundrum reinforces my conclusion that the expungement of arrest records must not be undertaken lightly. In a sense, expungement creates a legal fiction, in that the law says that the defendant has never been arrested while reality says that he has. Of course, such fictions are common in the law, and they are not inherently wrong or undesirable. In the context of an illegal arrest, for instance, expungement simply embodies the maxim that "equity considers that as done which ought to be done." *Cesena v. Du Page County*, 145 Ill. 2d 32, 38 (1991). In other situations, the use of the fiction may be necessary to prevent demonstrable, undue prejudice to an individual. However, I believe that the discretionary power to expunge ought to be narrow, because "[t]he judicial editing of history is likely to produce a greater harm than that sought to be corrected." *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972); see generally George Orwell, 1984 (First Signet Classics 1950) (1949).

Applying the foregoing analysis to the case at bar, I would hold that the trial court did not abuse its discretion in denying defendant's petition for expungement. Defendant's acquittal was, by itself, insufficient to support his claim for relief. Moreover, defendant did not attempt to prove that his arrest was unlawful or undertaken for an improper purpose, such as harassment. Also, while defendant's motion to reconsider asserted that denying expungement would "perpetuate

further embarrassment and irreparable harm," defendant did not specify this harm or attempt to introduce evidence to support his general allegations of injury. Hence, I agree with the majority that the trial court did not abuse its discretion in denying defendant's petition for expungement.